UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

04 SEP 29 AM 9:55

| | | |
|---|---|---|
| JONNA ROBISON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CIVIL ACTION NO. CV-03-B-0842-NE |
| | ) | |
| HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY, | ) ) | |
| | ) | ENTERED |
| Defendant. | ) | SEP 29 2004 |

## MEMORANDUM OPINION

Currently before the court is a Motion for Summary Judgment filed by defendant Hartford Life and Accident Insurance Company. (Doc. 21.) In this lawsuit, plaintiff Jonna Robison contends that defendant failed to pay benefits due to her under an insurance policy providing long-term disability coverage. The policy at issue is a qualified ERISA policy and it is undisputed that plaintiff's claims are subject to ERISA preemption. Upon consideration of the record, the submissions of the parties, the arguments of counsel, and the relevant law, the court is of the opinion that defendant's Motion for Summary Judgment, (doc. 21), is due to be granted.[1]

---

[1] At the conclusion of oral argument, the court informed the parties of its intention to grant summary judgment in favor of defendant. The court requested that counsel for defendant prepare a proposed memorandum opinion for the court. Although the court made some minor changes to the opinion prepared by defendant's counsel, it has adopted a large part of the proposed opinion. The court is aware of the admonition of the Eleventh Circuit that district courts not delegate "the task of drafting important opinions to litigants." *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1373 n.46 (11th Cir. 1997). This is an important opinion. Before requesting a proposed opinion from defendant's counsel, the court had reached a firm decision as to the appropriate outcome. Counsel drafted the opinion



I. **Summary Judgment Standard**

Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The party asking for summary judgment bears the initial burden of showing that no genuine issues exist. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Once the moving party has met its burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and show that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In deciding a motion for summary judgment, the judge's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. Credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are to be left to the jury, and therefore the evidence of the nonmovant party is to be believed and all justifiable inferences are to be drawn in his favor. *See id.* at 255. Nevertheless, the nonmovant need not be given the benefit of every

---

according to the express instructions of the court as to its contents. These instructions were stated to defendant's counsel, with plaintiff's counsel present, following oral argument. Although largely taken from the opinion proposed by defendant's counsel, the court personally reviewed this opinion, and the opinion reflects the court's own conclusions.

2

inference but only of every *reasonable* inference. *See Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

## II. Statement of Facts

At all times relevant to these proceedings, plaintiff was employed by SCI Systems, Inc. ("SCI") as a production operator. (Doc. 26, Ex. 1 at 1.)[2] SCI sponsored and maintained a group long-term disability plan (the "Plan") for eligible employees. The Plan was insured by a group insurance policy (the "Policy") issued by defendant to SCI in 1999. (Doc. 22 ¶¶ 4–5.) Defendant also serves as the Claims Administrator for the Plan. (*Id.* ¶ 6.) On December 23, 1997, plaintiff completed and submitted an election form evidencing her intention to participate in the Plan. (Doc. 22 ¶ 7; doc. 26, Ex. 1 at 279.)

In order to receive benefits under the Plan, a claimant must satisfy the definition of "disability" or "disabled" as those terms are defined in the Policy. The Policy provides:

> Disability or Disabled with respect to Class 2, means that during the Elimination Period and for the next 24 months you are prevented by:
>
> 1. accidental bodily injury;
> 2. sickness;
> 3. Mental Illness;
> 4. Substance Abuse; or
> 5. pregnancy,
>
> from performing one or more of the Essential Duties of Your Occupation, and as a result your Current Monthly Earnings are no more than 80% of your Indexed Pre-disability Earnings.

---

[2]Reference to a document number, ["Doc. ___"], refers to the number assigned to each document as it is filed in the court's record.

> After that, you must be so prevented from performing one or more of the Essential Duties of Any Occupation.[3]

(Doc. 26, Ex. 2, Certificate of Insurance at 5 (footnote added).) The Policy also stipulates that it is the claimant's responsibility to provide ongoing proof of such disability or benefits will terminate:

> We will terminate benefit payment on the first to occur of:
>
> 1. the date you are no longer Disabled as defined;
> 2. the date you fail to furnish Proof of Loss, when requested by us;
> 3. the date you are no longer under the Regular Care of a Physician, or refuse our request that you submit to an examination by a Physician;
> . . .

(Doc. 26, Ex. 2, Certificate of Insurance at 12.)

On November 24, 1999, plaintiff submitted an application for long-term disability benefits under the Plan. (Doc. 26, Ex. 2 at 273–78.) Plaintiff claimed that she was unable to return to work due to "burning" in her stomach and vomiting following recent surgeries for stomach ulcers, a hernia, and a ruptured spleen. (Doc. 26, Ex. 1 at 274, 268.) Based on a treatment note supplied by her treating physician, Dr. Clement P. Cotter, plaintiff's claim for benefits was initially approved by defendant. (Doc. 26, ex. 1 at 267; doc. 22 ¶ 8.) Dr. Cotter opined that plaintiff should be able to return to work on January 1, 2000, but later extended that date to March 6, 2000. (Doc. 26, Ex. 1 at 281, 267.) Plaintiff failed to return to work by

---

[3] A "Class 2" employee is defined as an active employee with less than 3 years of service. (Doc. 26, Ex. 2, Certificate of Insurance at 3.) Plaintiff was employed on December 8, 1997 (Doc. 26, Ex. 1 at 279), and therefore was a Class 2 employee at the time she submitted her application for long-term disability benefits in November of 1999. (Doc. 26, Ex. 1 at 278.)

4

either projected date. Defendant continued to pay benefits, after advising plaintiff in January of her responsibility to provide continued proof of total disability. (*Id.* at 263–64.)

During the weeks and months following the onset date of plaintiff's alleged disability, defendant made multiple written and oral requests to Dr. Cotter for updated office notes and medical records. (*Id.* at 26–28, 222–23.) Defendant informed plaintiff on several occasions that Dr. Cotter's office was not cooperating with those requests. (*Id.* at 27.) Defendant also advised plaintiff that she must meet the definition of total disability as defined in the policy in order to continue receiving disability benefits after December 10, 2001. (*Id.* at 212–13.) The treatment notes and medical records eventually supplied by Dr. Cotter indicated that plaintiff was experiencing symptoms of abdominal pain, nausea, and vomiting secondary to hiatal hernia and a ruptured spleen. (Doc. 26, Ex. 1 at 248–49.) However, Dr. Cotter repeatedly assigned plaintiff restrictions and limitations consistent with work activity and, in fact, reported that she was able to perform sedentary work – the level of work performed by plaintiff prior to her surgeries. (*Id.* at 206–07, 248–49, 226–27, 241.)

On November 29, 2001, and twice thereafter, defendant faxed questions to Dr. Cotter requesting clarification of the nature and extent of plaintiff's physical restrictions and limitations, without receiving any response. (Doc. 26, Ex. 1 at 17, 182.) On February 5, 2002, defendant sent a letter to plaintiff explaining that it had made several unsuccessful attempts to obtain medical information from Dr. Cotter. (*Id.* at 179–81.) On February 13, 2002, Dr. Cotter's office faxed defendant a note stating: "To Whom it May Concern: This 47 year old white female has chronic gastritis, chronic lumbo sacral spine disease. She also has difficulty

5

lifting, standing any length of time, and walking any distance. She also has chronic persistent anemia and *may only participate in sedentary activities with the ability to move about.*" (*Id.* at 176.) (emphasis added) On March 14, 2002, Dr. Cotter submitted a letter to defendant advising that plaintiff was under the care of another physician for her disability and that all related questions should be referred to him, only to send a second letter a few weeks later stating that "[plaintiff] is still under my care for her stomach disability." (*Id.* at 165–66, 173–74.)

On June 27, 2002, defendant informed plaintiff of its decision to terminate continuing long-term disability benefits based on both the Policy language and the information contained in the administrative record. (*Id.* at 160–63.) Plaintiff, through her attorney, appealed the denial on July 3, 2002, enclosing the one-line letter from Dr. Cotter, dated April 23, 2002, stating that "[plaintiff] is still under my care for her stomach disability." (Doc. 26, Ex. 1 at 153–55.) A few months later, during the pendency of the appeal, plaintiff's counsel submitted additional correspondence from Dr. Cotter stating that, based on his "objective findings," the plaintiff is unable to perform "any occupation." (*See id.* at 136–37.)

Defendant engaged University Disability Consortium ("UDC"), an outside medical consulting firm, to have one of its affiliated physicians perform an independent medical review of plaintiff's claim file. (Doc. 26, Ex. 1 at 99.) The matter was assigned to Olaf Anderson, M.D., M.S., F.A.C.S., who is board certified in general surgery. (*Id.* at 67–69.) Despite five attempts, Dr. Anderson was unable to speak directly with Dr. Cotter. (*Id.*) Dr. Anderson made four similarly fruitless attempts to reach the other physician said to be treating plaintiff. (*Id.*)

After reviewing Dr. Cotter's office notes dated May 12, 2000 to January 31, 2003, Dr. Anderson determined that those notes concerned primary care complaints without documentation or supporting evidence of plaintiff's "on-going inability to function occupationally." (*Id.*) Dr. Anderson also concluded that the medical records supplied by Dr. Parker, a physician who evaluated plaintiff's recent complaints of back discomfort, revealed mild to moderate degenerative changes of the spine which were treated conservatively through physical therapy and steroid injections. (*Id.* at 64.)

On March 21, 2003, defendant again denied plaintiff's appeal for long-term disability benefits based upon consideration of plaintiff's medical records, physician statements, physical capabilities evaluations, job requirements submitted by her supervisor, and the independent medical evaluation performed by Dr. Anderson. (Doc. 26, Ex. 1 at 92–94.) A few months later, on April 10, 2003, plaintiff filed the instant lawsuit.

### III. Discussion

There is no dispute that the subject Plan is an "employee benefit plan" within the meaning of 29 U.S.C. § 1001, *et. seq.* ("ERISA"). It is also undisputed that the applicable plan documents grant discretion to defendant to interpret the terms of the Plan and to determine eligibility for Plan benefits. (Doc. 26, Ex. 2, Certificate of Insurance at 18.) The defendant has acknowledged that it both insures the Plan and acts as Claims Administrator for the Plan. (Doc. 22 ¶¶ 4–6.) The parties therefore agree that the benefits determination should be reviewed under the "modified" arbitrary and capricious standard. *See Firestone*, 489 U.S. at

115 ("conflict must be weighed as a factor" in determining abuse of discretion); *HCA Health Servs., Inc. v. Employers Health Ins. Co.*, 240 F.3d 982, 993 (11th Cir. 2001) (same).

According to the Eleventh Circuit in *HCA Health Services*, under the modified arbitrary and capricious standard, the first step is to determine *de novo* whether the claims administrator's decision was legally correct or legally wrong. *HCA Health Servs.*, 240 F.3d at 993 ("Regardless of whether arbitrary and capricious or heightened arbitrary and capricious review applies, the court evaluates the claims administrator's ... [finding of fact] to determine whether ... [those findings] are 'wrong.' "). If the court deems those findings to be "legally correct," then it need not proceed with any further analysis. *See id.* If, however, the court determines that the claims administrator's findings of fact are "wrong," then under the heightened arbitrary and capricious standard, the court must determine whether the plaintiff has proposed "reasonable" findings to rival those of the claims administrator. *See id.* at 994; *see also Torres v. Pittston Co.*, 346 F.3d 1324, 1332 (11th Cir. 2003) (clarifying that modified arbitrary and capricious standard applies to both plan interpretations and findings of fact).

Based on a review of the entire administrative record, the court concludes that the defendant correctly determined that plaintiff had failed to adduce sufficient evidence demonstrating a total "disability." As previously noted, the Policy defines "disabled" or "disability" as follows:

> Disability or Disabled with respect to Class 2, means that during the Elimination Period and for the next 24 months you are prevented by:
>
> 1. accidental bodily injury;
> 2. sickness;

> 3. Mental Illness;
> 4. Substance Abuse; or
> 5. pregnancy,
>
> from performing one or more of the Essential Duties of Your Occupation, and as a result your Current Monthly Earnings are no more than 80% of your Indexed Pre-disability Earnings.
>
> After that, you must be so prevented from performing one or more of the Essential Duties of Any Occupation.

(Doc. 26, Ex. 2, Certificate of Insurance at 5.) The Policy also expressly provides that benefits will terminate, *inter alia*, when the claimant is no longer "disabled," fails to furnish "proof of loss," or is no longer under the "regular care of a physician." (*Id.* at 12.)

Defendant initially approved plaintiff's application for long-term disability benefits in December of 1999 based on medical documentation suggesting that, at that point in time, plaintiff was unable to return to her job due to recent surgeries for stomach ulcers, a hernia, and a ruptured spleen. (Doc. 26, Ex. 1 at 268.) Although plaintiff's treating physician initially projected that plaintiff would be able to return to her job within weeks of her surgeries, she never attempted to do so. (*Id.* at 267–68.) The record indicates that, in the weeks and months following the initial benefits award, defendant sought without much success to obtain medical information tending to support plaintiff's claim of ongoing disability. (*Id.* at 26-28, 179–81, 222–23.)   Plaintiff received benefits throughout the Policy's twenty-four-month "own occupation" period. (Doc. 22 ¶ 8.) Plaintiff also received an additional seven months of benefits, from December 2001 through June 27, 2002, while defendant investigated her claim under the "any occupation" standard. (*Id.*)

9

Based on the medical and vocational documentation in plaintiff's claim file, defendant determined that the evidence was insufficient to support a finding of total disability. (Doc. 26, Ex. 1 at 160–63.) The denial letter, issued to plaintiff's counsel, states as follows:

> We advised [plaintiff] in a letter dated 2/05/02 that we had made several attempts to obtain information from her treating physician, Dr. Cotter, and we advised her that we needed medical verification of continued disability in order to continue benefits. We provided her with applicable policy language. After that, we did receive copies of Dr. Cotters [sic] office notes from 10/10/01 through 1/11/02, along with a letter from him, dated 2/13/02. He indicated in that letter that [plaintiff] had chronic gastritis, chronic lumbar spine disease and she has difficulty lifting, standing any length of time, or walking any distance. He further notes that **she could participate in sedentary activities**. We then received a letter from Dr. Cotter dated 3/13/02, addressed To Whom it may Concern, indicating that his patient was now under the care of Dr. Larry Parker for her disability. We sent [plaintiff] a letter on 3/15/02 advising that Dr. Cotter was no longer verifying disability, and that she needed to provide us with information from Dr. Parker. We received a letter from you dated 3/20/02 asking for a copy of the policy, which was sent to you on 3/26/02 along with a second notification that we needed additional information if she was being treating by physicians other than Dr. Cotter.
>
> As of this date, we have not received the requested information from [plaintiff] or any other physicians that would indicate she is currently under treatment.
>
> The following information, not previously submitted, is necessary for a determination of this claim. Specifically, medical verification that [plaintiff] is currently under regular treatment and is disabled under the terms of the policy. If you would like this information considered, we must receive it as soon as possible.

(*Id.* at 162) (emphasis added).

Plaintiff appealed the denial of her claim and, in support thereof, submitted a one-sentence letter from Dr. Cotter, dated April 23, 2002, stating that plaintiff "is still under my care for her stomach disability." (*Id.* at 153–55.) On August 5, 2002, defendant upheld its

denial on the basis that plaintiff had failed to submit sufficient medical evidence to support a finding of disability under the terms of the Policy. (*Id.* at 144–45.) Defendant's denial letter explained: "While Dr. Cotter states that [plaintiff] is under his care and her disability is based on objective findings in her medical records, there is no medical evidence provided to support that she is disabled under the terms of the policy." (*Id.*) Moreover, even though the plan provides for only one appeal, defendant's second denial letter invited plaintiff's counsel to submit any "information that establishes that [plaintiff] is, and has been, under the regular care of a physician and is disabled under the terms of the policy ...". (*Id.*)

Plaintiff, through her counsel, re-appealed the denial on November 18, 2002, but did not submit any additional medical information in support of her claim for benefits. (Doc. 26, Ex. 1 at 140–41.) However, a few weeks later, plaintiff's counsel submitted the following conclusory statement from Dr. Cotter: "I have made objective medical findings relating to [plaintiff's] medical condition and determined that she is disabled. [Plaintiff] is unable to perform any occupation. This statement is provided as verification that [plaintiff] is disabled." (*Id.* at 136–37.) In connection with its consideration of plaintiff's second appeal, defendant referred plaintiff's entire claim file to Olaf Anderson, M.D., M.S., F.A.C.S., an outside medical consultant, for an independent medical review. (*Id.* at 95–97.) Dr. Anderson concurred with defendant's prior determination that the administrative record was void of any evidence "of this claimant's need and justification for ongoing inability to function occupationally." (*Id.* at 97.) Based on Dr. Anderson's consulting opinion, and the information contained in the claims file, defendant affirmed its decision that plaintiff had failed to provide

11

satisfactory proof that she was disabled from performing "any occupation" or work for which she is or could become qualified by training, education, or experience. (*Id.* at 92–94.)

After conducting a *de novo* review of the Plan terms and the administrative record, the court finds that defendant's decision to deny plaintiff's request for continuing disability benefits was correct. There is no medical evidence before the court sufficient to raise a genuine dispute as to whether she is totally "disabled" as that term is defined in the Policy. Indeed, as defendant correctly points out, her own treating physician concluded, on no less than two occasions, that she retained the capacity to perform sedentary work. (Doc. 26, Ex. 1 at 176, 198–99, 241.) Although this same physician submitted a letter during the appeal process suggesting that plaintiff was "totally disabled" and unable to perform "any occupation," such statements, without any specific reference to objective findings, are insufficient to support a disability claim. *See, e.g., Black & Decker Disability Plan v. Nord*, 123 S. Ct. 1965, 1970 (2003) ("Nothing in [ERISA] . . . suggests that plan administrators must accord special deference to the opinions of treating physicians."); *Jones v. Heckler*, 702 F.2d 616, 621 (5th Cir. 1983) ("[I]t is clear that the weight to be given a physician's statement is dependent upon the extent to which it is supported by specific clinical findings."). This is especially true where, as here, the physical capacity reports and evaluations in the record uniformly indicate only mild restrictions and limitations on plaintiff's daily activities.

As an alternative basis for affirming its decision to deny continuing benefits, defendant argues that the limited medical evidence submitted by the plaintiff actually supports its

determination that she can perform "any occupation," and perhaps even her own job.[4] Under the Policy, the definition of "disability" changes once a claimant receives twenty-four months of benefits, requiring him or her to demonstrate that she is unable to perform "one or more of the Essential Duties of Any Occupation." (Doc. 26, Ex. 2, Certificate of Insurance at 5.) The term "Any Occupation" means "an occupation for which you are qualified by education, training or experience, and that has an earning potential greater than an amount equal to the product of your Indexed Pre-disability Earnings and the Benefit Percentage." (*Id.* at 4.)

The administrative record reveals that plaintiff has a high school education and previous work experience as a dining room supervisor, waitress, and inventory clerk. (Doc. 26, Ex. 1 at 252, 268.) The record also contains a detailed description of the physical requirements for the position of production operation – the position plaintiff held prior to the onset date of her disability. According to plaintiff's supervisor, those requirements are as follows: continuous keyboard use, continuous repetitive hand motions, frequent sitting, occasional standing and stooping, and frequent pushing or pulling of five to ten pounds on a conveyor. (*Id.* at 241.) Her supervisor also confirmed that plaintiff's job could be performed by alternating sitting and standing. (*Id.*) The defendant argues that the restrictions and limitations assigned to the plaintiff by her treating physician are compatible with physical requirements necessary to

---

[4]During oral argument, the court informed the parties that it would not grant summary judgment on this alternative ground. However, a closer review of the facts and law have convinced the court that defendant is entitled to judgment as a matter of law on this ground as well.

13

perform a multitude of jobs, including her own job. (*Id.* at 176, 198–99, 206–07, 241, 248–49, 226–27.)

The plaintiff takes issue with defendant's "any occupation" analysis because the administrative record does not contain any vocational evidence or a labor market survey identifying the specific job(s) plaintiff was, or could become, qualified to perform, and the earning potential for the job(s). This argument, however, is not convincing. Indeed, the majority of courts that have addressed the issue have concluded that consideration of vocational evidence is not required where the evidence in the administrative record supports the conclusion that the claimant does not have a disability that prevents him or her from performing some identifiable job. *See, e.g., Pari-Fasano v. ITT Hartford Life & Accident Ins. Co.*, 230 F.3d 415, 420–21 (1st Cir. 2000); *McKenzie v. Gen. Tel. Co. of Cal.*, 41 F.3d 1310, 1317 (9th Cir. 1994); *Duhon v. Texaco, Inc.*, 15 F.3d 1302, 1309 (5th Cir. 1994); *Block v. Pitney Bowes, Inc.*, 952 F.2d 1450, 1455 (D.C. Cir. 1992); *Potter v. Conn. Gen. Life Ins. Co.*, 901 F.2d 685, 686 (8th Cir. 1990). In light of plaintiff's education, prior work experience, and capacity for sedentary-level work, it cannot be said that defendant erred in failing to perform an occupational analysis in connection with its "any occupation" determination. Moreover, as defendant points out, the evidence of record supports a finding that plaintiff could return even to her own job as a production operator. The position of production operator, of course, qualifies as "any occupation" under the terms of the Policy.

Plaintiff also argues that the record is void of any evidence of the earning potential for the hypothetical job(s) for which she is eligible, thereby rendering defendant's "any

occupation" analysis flawed. (Doc. 26, Ex. 2, Certificate of Insurance at 4.) At first blush, plaintiff's argument has surface appeal. But the beauty of it is only skin deep. As noted above, defendant paid plaintiff disability benefits – 60% of her pre-disability monthly wage of $1,135.33 – for approximately thirty-one months. (Doc. 22 ¶ 8; doc. 26, Ex. 1 at 265) Therefore, at all times relevant to this action, defendant had knowledge of plaintiff's pre-disability wages.[5] Although the administrative record does not specifically identify sedentary jobs satisfying this salary threshold, it is clear that such jobs are available to a high school educated individual with diverse work experience. Thus, defendant's determination that plaintiff was not precluded form performing the essential duties of "any occupation" was correct and, under the terms of the Policy, plaintiff is not entitled to disability benefits.

Defendant's Motion for Summary Judgment as to plaintiff's claim for benefits will be granted, and such claim dismissed.

## IV. Conclusion

For the foregoing reasons, the court is of the opinion that there are no material facts in dispute and that defendant is entitled to judgment as a matter of law. An order granting defendant's motion for summary judgment will be entered contemporaneously with this Memorandum Opinion.

---

[5]The policy provides for an annual adjustment of pre-disability earnings by adding the lesser of 10% or the percentage change in the Consumer Price Index. (Doc. 26, Ex 2, Certificate of Insurance at 5.)

**DONE** this 28th day of September, 2004.

*Sharon Lovelace Blackburn*
**SHARON LOVELACE BLACKBURN**
United States District Judge

16